IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHERMAN M. HUNT,                          )
                                         )
                    Plaintiff,            )
                                         )
v.                                        )          Case No. 11-2020-DJW
                                         )
RIVERSIDE TRANSPORTATION, INC.,           )
                                         )
                    Defendant.            )

## MEMORANDUM AND ORDER

Plaintiff Sherman M. Hunt, proceeding pro se, brings this lawsuit against his former employer, Riverside Transportation, Inc., asserting claims for race discrimination and hostile work environment based on race in violation of Title VII of the Civil Rights Act of 1964,[1] and retaliation under 42 U.S.C. § 1981. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.[2] This matter is presently before the Court on Riverside's Motion for Summary Judgment (ECF No. 47). As explained in more detail below, the motion is granted. The Court grants summary judgment on Hunt's Title VII race discrimination and Section 1981 retaliation claims, and dismisses Hunt's Title VII hostile work environment claim for failure to exhaust administrative remedies.

---

[1] 42 U.S.C. § 2000e *et seq.*

[2] *See* Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (ECF No. 26).

## I.    FACTUAL BACKGROUND

The following facts are either uncontroverted or, where controverted, are construed in the light most favorable to Hunt, the non-moving party. Immaterial facts and factual averments not properly supported by the record are omitted.

### A.    Employment

Plaintiff Sherman M. Hunt ("Hunt") is an African-American male and was employed by Defendant Riverside Transportation Inc. ("Riverside"), a trucking company.  At all relevant times, Riverside operated a maintenance facility and an administrative office.

In the fall of 2008, Riverside began employing Hunt as contract labor on a day to day basis. Hunt cleaned the Riverside maintenance shop and was supervised by Kelvin Brown, Riverside's Maintenance Director.  In July 2009, Riverside made Hunt an employee. In February 2010, Hunt was moved to the administrative office, where he was supervised by Riverside's Operations Manager, Sean Tulipana.

### B.    "Boy" Comment

In December 2010, Riverside hired independent contractor, William Wiley, to remodel the driver's lounge.  Wiley is the father-in-law of Riverside's Operations Manager, Sean Tulipana, and is sixty-three years old. On December 2, 2010, Hunt began assisting Wiley on the remodeling project. They had previously worked together on a project at Tulipana's house.

While working together, Hunt believed that Wiley acted inappropriately towards him by referring to him as "boy" and pushing him. The incident was reported to Riverside management. Hunt refused to participate in the investigation. Wiley claimed that he referred to all younger men as "boys." Tulipana conducted an investigation and counseled Wiley that his actions

violated company policy and that any future violations would result in his removal from the remodeling project. The project was completed without further incident.

### C. "Fudgesicle" Comment

On December 28, 2010, Hunt was dancing around like a boxer in the Riverside office kitchen. Gary Martin, another Riverside employee, walked into the kitchen and Hunt told him he could take him. Hunt then called Martin "fat boy" and both of them laughed. Martin returned to his desk, but Hunt continued to make comments to him. Martin returned to the kitchen and he and Hunt play wrestled. Martin then grabbed a broom and told Hunt that if he did not knock it off, he would take the broom and make a "fudgesicle" out of him. Hunt knew it was horseplay, but felt that Martin's "statement damaged [him]." Hunt did not file a formal employee complaint about the "fudgesicle" comment.

### D. Aggressive Driving Complaint

Later on December 28, Gary Martin instructed Hunt to drive to Blue Springs and pick up a driver for the company. Hunt wanted to use his personal vehicle instead of the company van, but Martin told him to drive the company van. After Hunt left, Lisa Schermerhorn, Riverside's safety director, received a phone call from a female motorist complaining that a driver in a Riverside van tailgated her, tried to pass her on the shoulder, and then passed her on the left in the area of 7 Highway in Blue Springs, Missouri. The woman described the van's driver and recalled that the driver wore a red jacket. Hunt was wearing a red jacket that day and was the only Riverside driver in that area when the complaint was made.

When Hunt returned to Riverside, his supervisor Tulipana met with him to address the motorist's complaint. Hunt did not give a statement and would not refute the motorist's complaint. Hunt was suspended for three days.

### E. December 28, 2010 EEOC Charge

On December 28, 2010, the day he received the three-day suspension, Hunt filed a charge of discrimination with the EEOC against Riverside. On the charge form, he checked the box indicating that the discrimination was based upon his race. He also provided the following details regarding his charge of discrimination:

> I have been working for this company as a Janitor/Utility Person since about July 2008. Before that I worked as an independent contractor performing basically the same kind of work. Since I have been employed at this company I believe that I have been treated with disrespect by the entire management staff because of my race, Black·African American. They talk to me any way they want to and make comments like "I am going to put my mop handle up your butt and make a fudge sickle out of you".
>
> Today I was forced to drive the company van when I told them I prefer to drive my own vehicle. They said someone called and reported that I cut them off in the van and I was suspended without pay. They didn't listen to my side or give me a warning. I have no one in the company to complain to.
>
> I believe that I am being discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, by being forced to drive the company van and suspended without pay because of my race, Black-African American.[3]

After receiving notice of the charge, Riverside investigated the "fudgesicle" incident. Lisa Schermerhorn interviewed Gary Martin and a witness, Craig McKenzie. Martin told Schermerhorn that he and Hunt were joking around as they had done in the past and the "fudgesicle" comment was made in jest. Martin was then verbally reprimanded and counseled for making the comment. Shortly thereafter, he received additional training about diversity in the workplace and employee conduct.

---

[3] Dec. 28, 2010 EEOC Charge, Ex. P to Def.'s Mot. for Summ. J. (ECF No. 47-16).

### F.	Greenlee Altercation

On January 12, 2011, Hunt walked into the Riverside break room where Alan Greenlee, a mechanic, was sitting. Hunt started talking about Martin Luther King Day, his recent suspension, and how everyone was trying to keep him down. Greenlee told Hunt to "shut the fuck up." In response to Greenlee's comments, Hunt slapped Greenlee's face and dared Greenlee to hit him. Greenlee called Hunt a "punk." Hunt accused Greenlee of being racist, a member of the Ku Klux Klan ("KKK"), and stated that Greenlee had referred to a co-worker Gary Martin as "Governor Gary." Greenlee accused Hunt of performing oral sex on the company owner. Kelvin Brown, Riverside's Maintenance Director, stopped the argument and ordered both men to get back to work. The argument was reported to management and Greenlee was suspended by Riverside for three days. Hunt was not disciplined for the incident.

### G.	January 14, 2011 Meeting

On January 14, 2011, Tulipana and Mike Martin, Riverside's comptroller, met with Hunt. They provided Hunt with behavioral guidelines including performing work duties as detailed in a job description; following company policies and procedures; not engaging in acts of insubordination; using appropriate language when addressing employees; refraining from asking employees for loans or cash advances; and allowing employees to perform their jobs without interference. They also gave Hunt a detailed job description and informed him that he would no longer be driving for Riverside business due to safety and liability concerns. Because Hunt could no longer drive for Riverside, there was less work for him to perform so weekly hours decreased from 40 hours per week to 22.5 hours per week unless management gave prior approval for additional hours. However, to offset his decrease in work hours, Riverside offered to increase Hunt's pay by $2.00 to $12.00 per hour.

On the same day of his meeting with Riverside's management, January 14, 2011, Hunt filed his Employment Discrimination Complaint commencing this action.

**H.     Events Occurring After Hunt Filed This Action**

On February 10, 2011, Hunt dumped mop water in freezing temperatures on Riverside's parking lot, causing employee, Gary Martin, to slip and pull a groin muscle. Tulipana counseled Hunt about pouring mop water on Riverside's lot in freezing temperatures. On February 16, 2011, Hunt was observed on camera dumping more mop water on the parking lot. On February 22, 2011, Hunt dumped mop water in freezing temperatures on the Riverside lot for a third time. That same day, Schermerhorn went outside to put rock salt on the frozen mop water and Hunt threw his head back and mocked her. On February 24, 2011, Tulipana left a note on Hunt's locker to come and talk to him about the mop water dumping incidents.

On February 25, 2011, Hunt was clearing snow from Riverside's parking lot with a snow blower and got some snow onto the car of Dayla Field, a new dispatcher at Riverside.  Hunt began to yell at Ms. Field and walked into Riverside administrative office and continued to argue. The incident was investigated by Tulipana that same day. Management held a meeting with Hunt to discuss the incident and during questioning, Hunt became aggressive and disruptive and yelled at Tulipana and called him a racist. Tulipana then fired Hunt for violating Riverside's behavioral guidelines, which had been previously outlined in writing for Hunt, by engaging in acts of aggression and insubordination.

After he was fired, Hunt filed a second EEOC discrimination charge against Riverside on February 25, 2011. In this charge, Hunt alleged that after he filed his first charge, Riverside called him in to question him about his reasons for filing the charge and typed up a statement and demanded that he sign it.  He also alleged that his work hours had been reduced to less than half

and he had been given more responsibilities. He further alleged that he was discharged for allegedly yelling at a dispatcher and denied yelling at her. He stated that he believed he had been discharged in retaliation for filing a charge of racial discrimination against his employer.

In May 2011, the Court appointed counsel to represent Hunt in this action.

In mid-July 2011, Hunt received a right to sue letter relating to his second charge of discrimination.

The Court held the scheduling conference on August 25, 2011 and entered the Scheduling Order (ECF No. 27) on August 30, 2011. The Scheduling Order set an August 31, 2011 deadline for filing any motions to amend the pleadings.

During the February 29, 2012 final pretrial conference, when discussing the theories of recovery Hunt set forth in the proposed pretrial order, Riverside raised the issue of whether Hunt had adequately pled all the claims he sought to include in the pretrial order. The Court suspended the final pretrial conference and set a March 1, 2012 deadline for Hunt to file his motion for leave to amend his complaint.

On March 2, 2012, Hunt filed his motion for leave to amend his complaint. The Court granted the motion in part and denied in part.[4] Hunt was granted leave to amend his complaint to add a claim for retaliation in violation of 42 U.S.C. § 1981, and clarify and amplify the Title VII race discrimination and hostile work environment claims already set forth in his December 28, 2010 EEOC charge and January 14, 2011 pro se complaint. Hunt was, however, denied leave to amend his complaint to add counts for violation of Title VII based on sex, and hostile work environment based upon sex as those claims were not adequately pled by his original pro se

---

[4] *See* May 23, 2012 Mem. & Order (ECF No. 35).

complaint, nor were they administratively exhausted by his December 28, 2010 EEOC charge. Hunt was further denied leave to amend his complaint to add a Title VII retaliation claim, because he failed to seek leave to amend his complaint within 90 days of his receipt of the July 2011 right to sue letter.

Riverside filed its Motion for Summary Judgment on October 26, 2012. Hunt, who has been represented by appointed counsel, failed to file a response in opposition to Defendant's motion. On November 20, 2012, the Court entered a Notice and Order to Show Cause (ECF No. 50) requiring Hunt to show good cause by December 4, 2012 why Defendant's Motion for Summary Judgment should not be granted. A copy of the Notice and Order to Show Cause was mailed to both Hunt's counsel and Hunt. Nothing was filed by December 4, 2012.

On December 10, 2012, Hunt filed a motion to re-appoint counsel, stating that he had learned that his appointed attorney has serious health issues and could no longer represent him. The Court construed the motion as a request to appoint another attorney to replace his current appointed counsel. The Court denied the motion on January 3, 2013, finding that Hunt had shown himself to be resourceful and possessing sufficient ability to proceed with his case without counsel.[5] The Court also ordered Hunt's appointed counsel withdrawn as counsel for record for Hunt, and granted Hunt, now proceeding *pro se*, an extension of time until January 17, 2013, in which to file his response to Riverside's summary judgment motion. Hunt filed his response (ECF No. 56) on January 14, 2013.

---

[5] *See* Jan. 3, 2013 Order (ECF No. 53).

## II.    STANDARDS

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] The substantive law will determine which facts are material, and only disputes over material facts—those that might affect the outcome of the suit under the governing substantive law—will properly preclude the entry of summary judgment.[7] Factual disputes that are irrelevant or unnecessary will not be considered in determining whether summary judgment is appropriate.[8] A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of materials in the record which it believes demonstrate the absence of a genuine dispute as to a material fact.[10] Under Fed. R. Civ. P. 56(c)(1), the party seeking summary judgment (the party asserting that a fact *cannot be*

---

[6] Subsection (a) of Rule 56 "carries forward the summary judgment standard expressed in former subdivision (c)," with only one non-substantive change—replacing "issue" with "dispute." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.). Despite the 2010 amendments, the advisory committee notes state that the summary judgment standard "remains unchanged." *Id.*

[7] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[8] *Id.*

[9] *Id.*

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

genuinely disputed), as well as the non-moving party (the party asserting that a fact *is* genuinely disputed) must support their respective assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Once the party seeking summary judgment has carried its initial burden, the party opposing the motion must establish the existence of a genuine dispute as to a material fact.[11] To determine whether summary judgment is proper, the court views the factual record and all reasonable inferences drawn from the record in the light most favorable to the nonmoving party.[12] If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or address the fact;

> (2) consider the fact undisputed for purposes of the motion;

> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

> (4) issue any other appropriate order.[13]

---

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

[12] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita*, 475 U.S. at 587).

[13] Fed. R. Civ. P. 56(e).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy, and inexpensive determination of every action."[14]

### B.    Standards Applied to Pro Se Litigants

As Hunt is now proceeding pro se in this matter, the Court must construe his pleadings more liberally and hold it to a less stringent standard than formal pleadings or papers drafted by lawyers.[15]   The Court must also take additional precautions before ruling on a motion for summary judgment when a pro se litigant is involved: "The rights of pro se litigants require careful protection where highly technical requirements are involved, especially when enforcing these requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits."[16]   However, "pro se litigants are subject to the same rules of procedure that govern other litigants."[17]   "We do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."[18]   For this reason, "the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[19]   Even a pro se litigant "does not escape the essential burden under summary judgment standards of

_____

[14] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1) (quotations omitted).

[15] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

[16] *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985).

[17] *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993).

[18] *Hall*, 935 F.2d at 1110.

[19] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

establishing that there is a genuine issue as to a fact material to [his] case in order to avert summary judgment."[20]

## III.     PLAINTIFF HUNT'S CLAIMS

In the Pretrial Order (ECF No. 49), Hunt asserts that he is entitled to recover upon the following theories:

1.     Discrimination based on race, a violation of Title VII of the Civil Rights Act of 1964, as amended;

2.     Hostile work environment based on race, a violation of Title VII of the Civil Rights Act of 1964, as amended;

3.     Violation of Title VII of the Civil Rights Act of 1964, as amended, by engaging in unlawful retaliatory behavior;

4.     Violation of 42 U.S.C. § 1981, *et seq.*, as amended, by unlawfully retaliating against Hunt after he engaged in a protected activity.

## IV.     TITLE VII RACE DISCRIMINATION CLAIM

Riverside argues that Hunt's race discrimination claim fails as a matter of law because requiring Hunt to drive a company vehicle is not an adverse employment action, it had a non-discriminatory reason for suspending Hunt for three days, and Hunt fails to meet his burden of demonstrating that an issue of material fact exists as to whether its proffered reason for the suspension was pretextual.

To establish a prima facie case of discrimination based on disparate treatment, Hunt must demonstrate that: (1) he is a member of a protected class, (2) he suffered an adverse employment

---

[20] *Murdock v. City of Wichita, Kan.*, No. 09-CV-02103-EFM, 2012 WL 4210471, at *5 (D. Kan. Sept. 18, 2012).

action, and (3) similarly situated employees were treated differently.[21]  Hunt meets the first element because the parties have stipulated he is African American, which is a protected class. As to the second element, Hunt identified two adverse employment actions in his December 28, 2010 EEOC discrimination charge: (1) Being forced to drive a company van, and (2) being suspended without pay.[22]

### A.    Being Forced to Drive the Company Vehicle

The first adverse employment action identified in Hunt's December 28, 2010 EEOC discrimination charge is that he was forced to drive a company vehicle instead of being allowed to drive his own personal vehicle. Riverside contends that requiring Hunt to drive a company vehicle instead of his own vehicle is not an adverse employment action of purposes of a Title VII race discrimination claim.

In *Burlington Industries, Inc. v. Ellerth*, the Supreme Court held that "[a] tangible employment action constitutes a significant change in his employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[23]  The Tenth Circuit liberally defines what constitutes an adverse employment action.[24]  As the Tenth Circuit has stated:

---

[21] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

[22] The Court's May 23, 2012 Memorandum and Order (ECF No. 35) granted Plaintiff leave to amend his complaint to "clarify and amplify the Title VII discrimination based upon race and hostile work environment based upon race claims already set forth in his December 28, 2010 [EEOC] charge and January 14, 2011 pro se complaint."  The Court will therefore limit its consideration to the adverse employment actions identified in the December 28, 2010 EEOC charge and January 14, 2011 pro se complaint and will not consider adverse employment actions identified in Plaintiff's later February 25, 2011 EEOC charge.

[23] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

[24] *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998).

Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand. Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to an adverse employment action.[25]

In this case, the Court finds that Hunt has failed to establish that being required to drive the company van instead of his own personal vehicle is an adverse employment action. Hunt has not shown that being required to drive the company van resulted in any changes to the terms or conditions of his employment, undermined his position, or affected his future employment opportunities. Rather it merely constitutes an additional reasonable job requirement or inconvenience. The Court finds that it does not rise to the level of an adverse employment action sufficient to demonstrate a prima facie case of race discrimination.

### B. Three-Day Suspension

Hunt also identifies his suspension as an adverse employment action. Riverside does not dispute that Hunt's three-day suspension without pay was an adverse employment action. Instead, it contends that it had a legitimate, non-discriminatory reason for suspending Hunt, namely that he was suspended for three days after a motorist called and complained about his aggressive driving while in the company vehicle.

A plaintiff alleging racial discrimination in violation of Title VII may prove intentional discrimination either by direct evidence of discrimination, or indirect or circumstantial evidence

---

[25] *Id.* (internal quotation marks and citations omitted). This continues to be the standard applicable to adverse employment actions under the substantive discrimination provisions of Title VII. *See Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) ("[W]hile *Burlington Northern* modified our retaliation standards for adverse actions, it had no similar effect on our discrimination jurisprudence. Accordingly, we continue to examine claims of adverse action on the basis of race or discrimination on a case-by-case basis, "examining the unique factors relevant to the situation at hand." (referring to *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

of discrimination.[26]  If a plaintiff offers no direct evidence of discrimination, as is the case here, the court applies the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[27]  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case, then the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the employment action.[28]  If the defendant meets its burden, then the plaintiff must demonstrate that an issue of material fact exists as to whether defendant proffered reason is merely pretextual.[29]

Riverside claims that it suspended Hunt for three days after it received a motorist complaint about Hunt driving aggressively in the company van on December 28, 2010. It contends that it thus had a legitimate, non-discriminatory reason for its employment action in suspending Hunt for three days.  In support of its motion for summary judgment, Riverside offers the affidavit of its Safety Director, Lisa M. Schermerhorn.  She states that:

> On or about December 28, 2010, Mr. Hunt was asked to drive the Riverside van to Blue Springs to pick up a Riverside driver. While Mr. Hunt was driving the van, a female motorist called Riverside and reported that a Riverside van driver was driving near I-70 and 7 highway in Blue Springs in a very aggressive manner. The Riverside driver was tailgating her, and tried to pass her on the shoulder before passing her on the left. The motorist stated that the driver was wearing a red jacket. Mr. Hunt was wearing a red jacket that day and was the only Riverside driver in that area at the time.
>
> Just prior to the call, Mr. Hunt had called Riverside dispatcher Gary Martin and told him that he knew that a motorist was going to call in on him and complain[]. Mr. Hunt was mad at Mr. Martin for making him drive the company van instead of allowing him to take his personal vehicle.

---

[26]*Burns v. Bd. of Cnty. Com'rs of Jackson Cnty.*, 330 F.3d 1275, 1283 (10th Cir. 2003).

[27] 411 U.S. 792, 802 (1973).

[28] *Id.*

[29] *Id.*

When Mr. Hunt returned to Riverside from Blue Springs, he refused to give Mr. Tulipana a statement regarding his version of the events that had happened that day. As a result, Riverside had no choice but to suspend Mr. Hunt for a few days.[30]

Hunt admitted in his deposition that he was driving a company van near I-70 and 7 Highway at 10:35am on December 28, 2010.[31] He testified that the main receptionist called him on the company phone to tell him about the motorist complaint.[32] He further admitted that he was wearing a red jacket that day.[33] He also testified that when John Lamotta, who was in the company van with him asked him what was wrong with him, he responded, "I know I'm about to get in some trouble when I get back. I know I shouldn't have taken the van."[34]

Riverside has proffered a legitimate, non-discriminatory reason for suspending Hunt for three days after the December 28, 2010 aggressive driving complaint. Hunt has the burden of demonstrating that an issue of material fact exists as to whether Riverside's proffered reason is merely pretextual. This means that Hunt must come forward with sufficient facts in controversy from which a jury could reasonably infer Riverside's explanation for Hunt's suspension was merely pretextual. A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[35] The

---

[30] Schermerhorn Aff., Ex. D to Def.'s Mot. for Summ. J. (ECF No. 47-4) ¶¶ 14-16.

[31] Hunt Dep. 125: 14-20, Jan. 4, 2012.

[32] Hunt Dep. 124: 15-23.

[33] Hunt Dep. 126: 5-6, 128: 15-17.

[34] Hunt Dep. 129: 5-6.

[35] *Plotke v. White*, 405 F.3d 1092, 1102-03 (10th Cir. 2005).

evidence which a plaintiff can present in an attempt to establish that a defendant's stated reasons are pretextual may take a variety of forms and a plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual.[36]

> A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.[37]

When assessing whether the plaintiff has made the appropriate showing under this standard, the Court must consider the evidence as a whole and draw all inferences in favor of the plaintiff.[38]

While Hunt denies that he was driving recklessly, he does not controvert the fact that a female motorist called to complain about a Riverside van driver wearing a red jacket who was driving in an aggressive manner, including tailgating and trying to pass on the shoulder. He also does not controvert that he was that driver. He thus fails to offer any evidence or cite to any evidence in the record showing that Riverside's reason for suspending him three days—for aggressive driving in a company van—was false or pretextual. As Hunt fails to offer any evidence or cite to any evidence in the record that shows Riverside's stated reason for his three-day suspension was pretextual, Riverside's motion for summary judgment on Hunt's race discrimination claim must be granted.

---

[36] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

[37] *Id.* (citations and quotations omitted).

[38] *Adler*, 144 F.3d at 670.

## V.     TITLE VII HOSTILE WORK ENVIRONMENT CLAIM

Riverside also seeks summary judgment on Hunt's hostile work environment claim, arguing that Hunt failed to exhaust his administrative remedies with respect to this claim. Riverside also argues that the claim fails as a matter of law because the identified isolated incidents are not sufficient for a rational jury to find his workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Finally, Riverside contends that after learning about the incidents involving Hunt and co-workers or independent contractors, it responded appropriately by investigating the incidents and disciplining the individuals involved.

To bring a hostile work environment claim, a plaintiff must have first administratively exhausted the claim by timely filing a charge of discrimination with the EEOC or state deferral agency, such as the KHRC.[39] A plaintiff asserting a Title VII hostile work environment claim is generally limited to the scope of the allegations raised in the EEOC charge. In determining whether a plaintiff has exhausted his administrative remedies with respect to a particular claim, the court looks to the scope of the administrative investigation that can reasonably be expected to follow the EEOC charge.[40] The EEOC charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination constitutes its own unlawful employment practice for which

---

[39] *See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) ("It is well-established that Title VII requires a plaintiff to exhaust his or her administrative remedies before filing suit." (citations omitted)).

[40] *Jones v. United Parcel Serv., Inc.,* 502 F.3d 1176, 1186 (10th Cir. 2007).

administrative remedies must be exhausted.[41] Courts liberally construe charges filed with the EEOC and state deferral agencies in determining whether administrative remedies have been exhausted as to a particular claim.[42]

Title VII claims filed with an administrative agency must contain facts that address each alleged act of discrimination.[43] Hostile environment claims, however, are unique from discrete discriminatory acts such as termination, failure to promote, denial of transfer, or refusal to hire.[44] A hostile environment involves multiple acts of discrimination that occur over the course of many days, months, or even years.[45] When taken together, these acts constitute one unlawful employment practice.[46]

When an employee seeks relief for incidents not listed in the original charge to the EEOC, the complaint nevertheless may encompass any discrimination like or reasonably related to the allegations in the charge, including new acts occurring during the pendency of the charge before the EEOC.[47] A claim is considered "reasonably related" when "the conduct complained of would fall within the scope of the administrative investigation which can reasonably be

---

[41] *Id.*

[42] *Id.*

[43] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

[44] *Id.* at 114-115.

[45] *Id.*

[46] *Id.* at 115.

[47] *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

expected to grow out of the charge that was made."[48] This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel.[49] Thus, precise pleading is not required for Title VII purposes.[50]

Exhaustion of administrative remedies is a "jurisdictional prerequisite to suit under Title VII—not merely a condition precedent to suit."[51] This requirement serves two purposes: to give notice of the alleged violation to the charged party, and to give the EEOC or KHRC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance.[52] If a complaint were allowed to encompass allegations outside the ambit of the predicate charge, this would circumvent the administrative agency's investigatory and conciliatory role and deprive the charged party of notice of the charge.[53] The burden is on the plaintiff, as the party seeking federal jurisdiction, to show by competent evidence that he exhausted his administrative remedies before filing the action.[54]

---

[48] *Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 667-68 (10th Cir. 2004) (unpub.) (citing *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003)).

[49] *Id.*

[50] *Id.*

[51] *Shikles*, 426 F.3d at 1317.

[52] *Woodman v. Runyon*, 132 F.3d 1330, 1342 (10th Cir. 1997).

[53] *Pritchett v. W. Res., Inc.*, 313 F. Supp. 2d 1120, 1127 (D. Kan. 2004).

[54] *Shikles*, 426 F.3d at 1317; *see also McBride v. CITGO Petroleum Corp.,* 281 F.3d 1099, 1106 (10th Cir. 2002).

In his December 28, 2010 EEOC administrative charge, Hunt checked the box indicating that the discrimination was based upon his race, but did not check the box indicating a continuing action. He provided the following details regarding his charge of discrimination:

> I have been working for this company as a Janitor/Utility Person since about July 2008. Before that I worked as an independent contractor performing basically the same kind of work. Since I have been employed at this company I believe that I have been treated with disrespect by the entire management staff because of my race, Black·African American. They talk to me any way they want to and make comments like "I am going to put my mop handle up your butt and make a fudge sickle out of you".
>
> Today I was forced to drive the company van when I told them I prefer to drive my own vehicle. They said someone called and reported that I cut them off in the van and I was suspended without pay. They didn't listen to my side or give me a warning. I have no one in the company to complain to.
>
> I believe that I am being discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, by being forced to drive the company van and suspended without pay because of my race, Black-African American.[55]

To lay a factual foundation for a racially hostile work environment claim, Hunt must allege facts indicating the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Hunt's EEOC charge does not state that he was subject to a hostile work environment or subjected to severe racial harassment. Nor does it contain any factual allegations that he was treated in such a manner or degree sufficient to allege a racially hostile work environment. Hunt alleges in his EEOC charge that he was treated with disrespect by the entire management staff, he was subjected to comments like "I am going to put my mop handle up your butt and make a fudge sickle out of you," and he was forced to drive the company van. These factual allegations in the EEOC charge, even when read liberally and viewed

---

[55] Dec. 28, 2010 Charge, Ex. P to Def.'s Mot. for Summ. J. (ECF No. 47-16).

collectively, are insufficient to put Riverside on notice that Hunt was alleging a hostile work environment claim, and would not have reasonably lead the EEOC to conduct an investigation of such a claim. The Court thus finds that Hunt failed to exhaust his administrative remedies for his hostile work environment claim because he did not allege sufficient facts on his EEOC charge that would indicate his workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Hunt has thus failed to administratively exhaust his hostile work environment claim. Because exhaustion of administrative remedies is a jurisdictional prerequisite to bringing a hostile work environment claim, the Court lacks subject matter jurisdiction over the claim and therefore must dismiss it.

## VI.        SECTION 1981 RETALIATION

Hunt's final claim is for unlawful retaliation after he engaged in a protected activity, in violation of 42 U.S.C. § 1981. To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.[56] "The test for establishing a prima facie case for retaliation is the same under both Title VII and 42 U.S.C. § 1981."[57] If the plaintiff can establish a prima facie case, the burden shifts to the employer to provide a legitimate, non-

---

[56] *Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006).

[57] *Id.* at 1211.

discriminatory reason for its employment action.[58] Finally, if the employer can satisfy its burden, the plaintiff then bears the burden to show that proffered reason was pretextual.[59]

A "causal connection" between a protected action and a subsequent adverse action can be shown through "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[60] "If the only evidence of causation is temporal relationship, then the adverse action must occur closely following the protected activity."[61] While temporal proximity may be a sufficient basis for establishing causation, it is not a necessary element for the third causal connection prong of a retaliation claim.[62] In other words, while temporal proximity may be one method of establishing a causal connection between the protected conduct and the alleged resulting adverse action, it is not itself an element of a claim of retaliation.[63] For a challenged action to be "materially adverse" to a reasonable employee, "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[64]

---

[58] *Id.*

[59] *Id.*

[60] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (quotation omitted).

[61] *Piercy*, 480 F.3d at 1198.

[62] *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999).

[63] *Id.*

[64] *Burlington*, 548 U.S. at 68 (internal citation and quotation marks omitted).

### A. Whether Hunt has Established a Prima Facie Case of Retaliation Under Section 1981

Hunt claims that he engaged in protected activity under 42 U.S.C. § 1981 by filing his charge with the EEOC and this lawsuit on January 14, 2011. Hunt claims that after he filed his EEOC charge and this employment discrimination lawsuit, Riverside retaliated against him by: (1) drastically reducing his work hours and job duties, and thereby his wages; (2) performing inadequate investigations into his complaints; (3) blaming him for inviting harassing behavior when Riverside finally did address, although inadequately, the individuals involved in the harassment; (4) permitting its employees to continue to harass and disparage him when they learned of his charge; (5) by unreasonably and overzealously criticizing and documenting his alleged violations of its written and unwritten policies and procedures; (6) by threatening him that he "will be the one to go" if he participated in additional disruptions, regardless of the behavior of other participants or the reasons for bringing inappropriate conduct of others to the attention of management and Riverside's leadership; and (7) by suspending and ultimately firing him on February 25, 2011 for a minor incident.

The uncontroverted facts show that on or about December 28, 2010, Riverside received notice that Hunt filed a charge of discrimination with the EEOC. Approximately two weeks later on January 14, 2011, Tulipana and Mike Martin, Riverside's comptroller, met with Hunt to provide him with behavioral guidelines and a detailed job description. They also informed him that he would no longer be driving for Riverside and his weekly hours would be decreased from 40 hours per week to 22.5 hours per week unless management gave prior approval for additional hours. Riverside offered to increase Hunt's pay by $2.00 to $12.00 per hour to offset the decrease in hours.

On January 22, 2011, Riverside was served with summons and Hunt's complaint.[65] On February 25, 2011, Hunt was fired for violating Riverside's behavioral guidelines by engaging in acts of aggression and insubordination.

Riverside argues that Hunt did not have a good faith belief he was engaging in protected opposition to discrimination because he filed his December 28, 2010 EEOC charge on the same day he got in trouble for driving aggressively. Riverside claims that Hunt was mad about being suspended and filed the charge out of spite. He knew that his allegation in the charge about the "entire management staff" threatening him with a mop handle was false and misleading. Riverside also contends that Hunt cannot establish a causal connection between his alleged opposition and the adverse employment actions because temporal proximity standing alone is not enough.

Making all inferences in favor of Hunt, the Court finds that Hunt has sufficiently shown all three elements to establish a prima facie case of retaliation. He engaged in protected opposition to discrimination by filing his EEOC complaint and by filing his action. He has shown that a reasonable person would find reduction of work duties and hours from 40 to 22.5 hours per week and the termination of employment to be materially adverse. Finally, he has sufficiently established a temporal-proximity based causal connection between his protected conduct of the filing of his EEOC charge in late December 2010 and his subsequent reduction in work duties and hours in January 2011. He has likewise sufficiently shown a causal connection between the filing of this action in January 2011 and the subsequent termination of his employment in February 2011. Close temporal proximity alone can suffice to demonstrate

---

[65] *See* Process Receipt and Return (ECF No. 7).

causation for the purpose of establishing a prima facie case.[66]  Hunt has therefore established a prima facie case of retaliation.

**B.      Whether Riverside has Proffered a Legitimate, Non-Discriminatory Reason for the Employment Actions**

As Hunt has establish a prima facie case of retaliation, the burden shifted to Riverside to show a legitimate, nondiscriminatory reason for its actions in reducing Hunt's work duties and hours and terminating his employment. Establishing a legitimate, nondiscriminatory reason is a burden of production and "can involve no credibility assessment."[67]

Riverside asserts that it reduced Hunt's work duties and hours in January 2011 as a result of the motorist complaint about Hunt's aggressive driving in December 2010. Riverside claims that it could no longer allow Hunt to drive for the company due to safety and liability concerns. If Hunt no longer drove for Riverside, there was not as much work for him to do and not enough to fill 40 hours of work per week. Riverside claims this constitutes a rational basis for cutting Hunt's work hours and points out that it increased his hourly rate to help compensate for the reduction in hours.

Riverside claims that it fired Hunt for violating its behavioral guidelines by engaging in acts of aggression and insubordination.  After being warned on January 14, 2011 that any further incidents meriting discipline would result in termination, Hunt continued to disrupt the workplace, threaten co-workers, and refuse to follow management's instructions. On February

[66] *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (holding that close temporal proximity of two weeks between protected activity and termination was "alone sufficient to establish a causal connection"); *Argo,* 452 F.3d at 1202 (holding that close temporal proximity of 24 days between plaintiff's complaint and his termination was sufficient to establish a causal connection).

[67] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quotation omitted).

10, 2010, Hunt purposefully dumped mop water on the company lot in freezing temperatures causing the lot to be icy and dangerous. Hunt was warned to not dump water on the lot in freezing temperatures. Despite being warned, Hunt dumped mop water on the lot in freezing temperatures again, but no action was taken against him. On February 22, 2011, Hunt dumped mop water in freezing temperatures a third time. When Lisa Schermerhorn, Riverside's Safety Director, put rock salt on the frozen mop water, Hunt threw his head back and mocked her. Riverside did not terminate Hunt until February 25, 2011, the day that Hunt yelled at a new co-worker, yelled at his supervisor and called his supervisor a racist.

The Court finds that Riverside has proffered legitimate, nondiscriminatory reasons for its actions in reducing Hunt's duties and hours in January 2011 and for terminating Hunt's employment in February 2011.

### C. Whether Hunt has Demonstrated that Riverside's Proffered Reasons are a Pretext

As Riverside has proffered evidence of legitimate, non-discriminatory reasons for reducing Hunt's work duties and hours and for terminating his employment, the burden switches back to Hunt to show that there is a genuine dispute of material fact as to whether Riverside's proffered reasons for reducing his work duties and hours and terminating his employment are pretextual, i.e., unworthy of belief. Hunt can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence" [68] and hence infer that the employer did not act for the asserted non-discriminatory reasons. In responding to Riverside's motion for summary judgment, Hunt has failed to meet his

---

[68] *Plotke*, 405 F.3d at 1102; *Argo*, 452 F.3d at 1203.

burden to present or cite to any evidence in the record that casts doubt on Riverside's proffered explanations and establish a genuine issue of fact whether those reasons are pretextual. Accordingly, the Court grants summary judgment in favor of Riverside on Hunt's Section 1981 retaliation claim.

## VII.      TITLE VII RETALIATION CLAIM

The Pretrial Order, which superceded Hunt's First Amended Complaint, also contains a claim for retaliation under Title VII.  The Court's May 23, 2012 Memorandum and Order (ECF No. 35) specifically denied Hunt leave to amend his complaint to add a Title VII retaliation claim.  Hunt received his right-to-sue letter in mid-July 2011, but did not indicate his intent to add a claim for retaliation until just prior to the February 29, 2012 final pretrial conference and did not file his motion to amend his complaint to add a Title VII retaliation claim until March 2, 2012.  The Court concluded that because Hunt failed to seek leave to amend his complaint within 90 days of receiving his second right to sue notice and the proposed Title VII retaliation claim did not relate back under Fed. R. Civ. P. 15(c)(1)(B), that it would be futile for Hunt to amend his complaint to add a claim for retaliation under Title VII.

Based upon the Court's prior ruling denying Hunt's motion for leave to amend, the Pretrial Order entered on October 29, 2012 should not have included Hunt's Title VII retaliation claim in the List of Plaintiff's Theories of Recovery or related Essential Elements sections.  The Court therefore amends the Pretrial Order (ECF NO. 49) to strike section VI.A.3 (titled "Violation of Title VII of the Civil Rights Act of 1964, as amended, by engaging in unlawful retaliatory behavior") and section VI.D. (titled "Essential Elements of Plaintiff's Third Theory of Recovery: Title VII retaliation") to conform to the Court's May 23, 2012 Memorandum and Order.

Even had the Court allowed Hunt to proceed with his Title VII retaliation claim, the Court would have granted summary judgment on this claim. "The test for establishing a prima facie case for retaliation is the same under both Title VII and 42 U.S.C. § 1981."[69]  As discussed above with regard to Hunt's Section 1981 retaliation claim, the Court finds that Riverside has proffered legitimate, nondiscriminatory reasons for its actions in reducing Hunt's duties and hours in January 2011 and for terminating Hunt's employment in February 2011.  Hunt has failed to present or cite to any evidence in the record that casts doubt on Riverside's proffered explanations and establish a genuine issue of fact whether those reasons are pretextual.

**IT IS THEREFORE ORDERED** that Riverside's Motion for Summary Judgment (ECF No. 47) is granted.  The Court grants summary judgment on Hunt's Title VII race discrimination and Section 1981 retaliation claims.

**IT IS FURTHER ORDERED** that Hunt's Title VII hostile work environment claim is dismissed for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that the Pretrial Order (ECF NO. 49) is hereby amended to strike section VI.A.3 (titled "Violation of Title VII of the Civil Rights Act of 1964, as amended, by engaging in unlawful retaliatory behavior") and section VI.D. (titled "Essential Elements of Plaintiff's Third Theory of Recovery: Title VII retaliation") to conform to the Court's May 23, 2012 Memorandum and Order denying Plaintiff leave to amend to add a Title VII retaliation claim.

---

[69] *Argo*, 452 F.3d at 1211.

Dated in Kansas City, Kansas on this 11th day of April 2013.

s/ David J. Waxse
David J. Waxse
U. S. Magistrate Judge